The. President
delivered the opinion of the Court.
The great objection made to the relief prayed for by the appellant is, that agreements of this sort are opposed to the rules of society, carrying with them strong marks of disrespect and irreverence to the parent, and ought therefore not to be countenanced in Court of Equity.
It is true, that obedience to parents during infancy, and respect through life, is not only a natural duty, but one, on which depends the peace and happiness of families, and consequently of society; and therefore, if the present agreement could by any means produce effects like those stated at the bar, however strong the evidence might be that such an agreement was made, it would meet with no favor with us, as being leavened with moral turpitude, and unfit for discussion- *171 even in a Court of Equity. Yet we cannot say, that a case may not exist, where such an agreement might be acquitted of those objections-—and the present is a strong instance of such a case.
The parent had always declared a settled intention to make an equal distribution of his estate amongst his sons. As he approached to the weak and infirm state of old age, when the mind, having lost its wonted vigor might be easily susceptible of any impressions, it was to be apprehended, that he might be induced to make considerable changes in the disposition of his estate. His eldest son having left the family and settled himself elsewhere, leaving his brothers around the father, might justly, or unjustly, entertain suspicions, that they might derive advantages from this circumstance. A jealousy of this sort though unfounded, might produce heart burnings, and domestic feuds amongst them. To prevent this, might have been the prevailing motive which governed the brothers, and an agreement founded upon such a motive could not be objected to, as tending to produce public or private inconvenience. To effect this end, we should expect to see a written agreement, ascertaining clearly the intention of the parties, deposited with some common confidential friend, under injunctions of secrecy, which would certainly answer better the object of the parties, than by making it the subject of conversation to house-keepers and overseers, as in this case. Though a written agreement might have been more proper, as being less liable to misconstruction, yet a parol agreement made before the act against frauds and perjuries took effect, might be enforced in this Court.
In this case, the proof of the agreement is too slight. A casual conversation amongst the parties is heard, not respecting the agreement, or the particular terms of it, but the division of the father’s estate. The agreement was made in March 1787, a few months after the act of frauds took effect; but as this is not noticed by the parties, or the counsel, it may not be *172 important, and at all events, it is not necessary to consider it; for there is no serious, solemn agreement proved, upon which a decree can be founded.
The decree must be affirmed.(1)

 Lewis v. Madisons, 1 Munf. 303.